MICHIGAN MILLING CO. *v.* VERNON STATE BANK.

1. APPEAL AND ERROR—DIRECTED VERDICT.
   Where a verdict was directed against the plaintiff in the trial court, the Supreme Court, on review, must take a favorable view of the evidence tending to support the plaintiff's claim.[1]

2. PRINCIPAL AND AGENT—BANK NOT LIABLE TO PRINCIPAL FOR EXTENDING BANKING FACILITIES TO AGENT WHERE GUILTY OF NO WRONG.
   Where the cashier and manager of a bank knew that the manager of an elevator, who was under contract to give all of his time to his principal, was an agent, but was informed by him that his principal had discontinued buying and had consented to his buying and selling on his own account, and the bank, on said representations, during a time when the agent was forbidden to buy on his principal's account, extended to him its banking facilities in connection with transactions on the agent's own account, which, as a whole, resulted in a loss to him but not to the principal, the bank was not liable to the principal on the theory that, with knowledge of the agency, it had enabled the agent to betray his trust and wrong his principal, since it was guilty of no wrong in doing what it did.[2]

Error to Shiawassee; Collins (Joseph H.), J. Submitted April 22, 1926. (Docket No. 14.) Decided June 7, 1926.

Case by the Michigan Milling Company against the Vernon State Bank and another for fraud. Judgment for defendant bank on a directed verdict. Plaintiff brings error. Affirmed.

*Matthews & Hicks,* for appellant.

*Pulver & Bush,* for appellee bank.

[1]Appeal and Error, 4 C. J. § 2709; [2]Banks and Banking, 7 C. J. § 376.

WIEST, J.    The Michigan Milling Company, located at Ann Arbor, had a branch elevator at Vernon in charge of Clarence G. Kercher as manager.    Kercher's employment contract expressly called for his entire time and forbid his engaging in a like business for himself.    Claiming the manager was disloyal and used his position and plaintiff's equipment to carry on, for his own profit, business he should be held to have done for the benefit of plaintiff, and that the Vernon State Bank, with knowledge of plaintiff's rights and Kercher's defection, extended its banking facilities in aid of his dereliction, plaintiff brought this suit to recover damages.    At the close of plaintiff's proofs, the trial judge held there could be no recovery against the bank.    Thereupon the jury was discharged, judgment entered in favor of the bank, and the trial against Kercher postponed.  ˙ Plaintiff insists the judgment so entered is wrong and reviews by writ of error.

A verdict having been rendered against plaintiff by direction of the court, we must, upon review, take a favorable view of the evidence tending to support plaintiff's claim.

Plaintiff invokes the rule that a third person, with knowledge of an agency, who lends aid to an agent to enable him, as such, to betray his trust and wrong his principal, is liable to respond in damages to the principal.    Application of the rule to the case before us is impossible.    The cashier and manager of defendant bank knew of the relation between plaintiff and Kercher, but claims Kercher represented he had been directed to stop buying commodities, to close out merchandise on hand, and collect accounts, and he had an arrangement with plaintiff by which he might buy and sell on his own account and pay a stated sum per bushel for the use of the elevator and equipment; that the bank accepted his word, took some collateral security, and gave Kercher credit for sight drafts with bills of lading attached for shipments he made, and,

upon payment of the drafts, charged Kercher with interest upon the face of the drafts until paid.  The good faith of the manager of the bank is beyond question, but plaintiff insists it was the duty of the bank manager to find out from plaintiff what its desire was and not to take the word of the agent in a matter so contrary to his employment, and, therefore, the bank should be held to have proceeded with the knowledge it might have had if inquiry had been made of plaintiff.

Kercher bought and shipped several car loads of wheat, bought several car loads of stock feed and some drain tile.  Some of the wheat went through the elevator but the stock feed and tile did not.  Running through Kercher's financial transactions at the bank, while doing business on his own account, appears his designation as agent, and in one instance, a check on account of such business was made payable to plaintiff.  All collections made by the bank upon drafts were credited to Kercher's personal account.  During such time there was a remnant, ranging from $5 to $19, in the deposit account of plaintiff at defendant bank.  During the time Kercher was buying on his own account he remained manager for plaintiff and was paid a salary.

June 15, 1924, plaintiff's directors decided to get the Vernon elevator ready for sale because plaintiff owed considerable money and wanted to dispose of four of its elevators.  June 19, 1924, plaintiff wrote Kercher, its manager at Vernon, as follows:

"*Dear Sir:*

"You have recently been visited by Mr. Malay with instructions to cease buying commodities at once and instructions to reduce accounts on the books all you can.  The idea is to get things into better shape by the first of July than they have been at the time of taking any recent statement.

"Mr. Schneider was the second largest stockholder in the Milling Company and, as you know, he died on June 7th.  There are several reasons for a closer ac-

counting than usual at this time and we are asking that these things be done and you be very careful and make no errors."

About the 1st of August, 1924, Kercher informed the manager of the bank that plaintiff was not in a position to buy grain and made the arrangement for financing his own purchases. There is no evidence justifying the charge that the bank conspired with Kercher, or, in fact, knowingly aided him in a breach, if any, of his agency. No money of plaintiff was used by Kercher and none of plaintiff's merchandise disposed of by him without an account for the proceeds. The only money the bank obtained for itself was from interest and amounted in all to about $16. The transactions of Kercher on his own account were during the months of August and September, 1924, and on the whole resulted in a loss. During such period Kercher was under order from plaintiff not to buy or deal in grain in its behalf, and, in fact, did not buy or deal for plaintiff.

The case is not the usual one of an agent using his position to buy and sell for himself while under employment to do so for another, but one where the agent bought and sold for himself during a period he was forbidden to buy and sell for his principal. No time need be spent in discussing the well-understood law of principal and agent, the loyalty due from the agent and his liability for tortious departure from his trust, and the right of the principal to earnings where the agent has turned the employment to his personal profit or to recover for conversion of goods or money belonging to his principal. Kercher followed instructions, and during the time in question did not buy or sell commodities for plaintiff. If he had bought the commodities he dealt in and sold the same on plaintiff's account, he would clearly have violated his instructions. Now, having

235—Mich.—21.

bought and sold on his own account, during a period he was forbidden to buy and sell on his employer's account, may the employer hold the bank for every dollar Kercher deposited, or for profit Kercher made on some deals, without taking into consideration the loss made on another deal that wiped out all the profits? Was the bank a joint wrongdoer in extending its banking facilities to Kercher under the circumstances? We may assume, for the purposes of the issues against the bank, that Kercher was not authorized to carry on any business at the elevator for his personal profit; that the bank relied on Kercher's representation that he had leave to make the business a personal affair and plaintiff has been wronged.    These matters are assumed, however, solely for the need of having a case in which to apply the law.

No case in point is called to our attention, and such search as we have been able to make has disclosed none.    Defendant bank is not guilty of conversion. Kercher made the deposits and withdrawals, and, whatever his liability to plaintiff, such liability is based upon a relation not existing between plaintiff and the bank in fact or by fiction.    What the bank did was to accept the sight drafts for the use of the depositor thereof upon an agreement that the proceeds should be subject to his order.    When checked against by the depositor and the money disbursed by the bank, the situation was the same as if cash had been delivered for safe-keeping and afterwards returned.    None of the money on deposit at the bank in the name of Kercher belonged to plaintiff, unless we consider profits in the several turnovers as impressed with a trust, but in such case the remedy is to follow the funds, and all such funds deposited by the trustee (if we term Kercher such) were paid to the trustee before the trust relation was asserted.    The case we have here is not one of the bank trying to hold plain-

tiff for acts of its agent, but one in which plaintiff seeks to hold the bank for participation in the wrongful acts of its agent.

The bank did not induce Kercher to enter business for himself, nor was it privy to the wrong, if any, committed by Kercher. The bank was guilty of no wrong, and was not in duty bound to deny its banking facilities to Kercher or withhold Kercher's deposits from withdrawal by assertion of rights between its depositor and a third person. We attach no significance to the use of the word agent, as employed by Kercher, for in each instance its use related to transactions carried on by Kercher in his own behalf. We find no authority authorizing a recovery against the bank, and can conceive of no reason for imposing liability on the bank.

The judgment is affirmed, with costs to the Vernon State Bank.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, CLARK, and MCDONALD, JJ., concurred.